The ASTORS' BEECHWOOD

v.

PEOPLE COAL COMPANY, INC. et al.

v.

Grant GIVEN d.b.a. Apple Construction Co. et al.

Nos. 94–207–M.P., 94–208–M.P. and 94–213–M.P.

Supreme Court of Rhode Island.

June 30, 1995.

Lauren Jones, Caroline Cole Cornwell, Jones Associates, Providence, John A. Murphy, Stephen T. Morrissey, Morneau & Murphy, Jamestown, for plaintiff.

Joel K. Gerstenblatt, Gerstenblatt & Gerstenblatt, Providence, B. Mitchell Simpson, III, Middletown, Fred L. Mason, Jr., Morrison, Mahoney & Miller, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

These consolidated cases came before the Supreme Court on the petitions for certiorari of Grant Given d.b.a. Apple Construction Co. and Apple Construction Co. (collectively as "Apple"), Peoples Coal Company (Peoples), and Germain Plumbing & Heating, Inc. (Ger-

main). These defendants sought the reversal of an order entered in the Superior Court granting the motions of the plaintiff, Astors' Beechwood, to reject an arbitration award out of time and to grant relief from judgment. For the reasons stated below, we grant the petitions. The pertinent facts are as follows.

### Facts and Procedural History

This case arose in 1989 out of a contract dispute. The plaintiff, a partnership with its place of business in Newport, Rhode Island, filed suit in Superior Court against, among others, Peoples and Germain.[1] In its complaint, plaintiff alleged that it had entered into a contract with Peoples for the purchase of an anthracite-fired steam boiler. The plaintiff further alleged that after Germain had installed the boiler, Astors' Beechwood discovered that the boiler was defective. On August 18, 1992, the parties agreed to proceed with nonbinding arbitration under the auspices of the Superior Court's Court–Annexed Arbitration Program. Later, on November 13, 1992, Peoples filed a third-party complaint against Apple, alleging that Apple was negligent in its design, construction, and installation of a coal bin which was part of the boiler.

Arbitration hearings were held in December 1993 and February 1994. The court-appointed arbitrator selected by the parties issued an award on February 8, 1994 (filed in the Superior Court Arbitration Office on February 9, 1994), finding for plaintiff. The award for compensatory damages, however, was for $10,442 whereas plaintiff's complaint had alleged damages against Peoples and Germain in the amount of $250,000. The plaintiff's counsel received the arbitrator's decision on February 10, 1994.

On that same day plaintiff's counsel received a phone call from Germain's insurance adjuster offering to pay the full amount of the award. During the phone call, plaintiff's counsel told the adjuster that the arbitration award was unacceptable to plaintiff. In a February 18, 1994 conference call with Germain's and Apple's legal representatives,

plaintiff's attorney informed defendants' counsel that the arbitration award was unacceptable and that, absent a settlement within the range of its monetary demand, plaintiff wished to proceed to trial. On February 22, 1994, plaintiff's counsel spoke with Peoples' counsel and informed him that the arbitration award was unacceptable.

An entry on the docket sheet in the Superior Court case file stated that the judgment on the arbitration award was filed on March 2, 1994. On March 3, 1994, plaintiff's counsel received a notice dated March 2, 1994, from the Arbitration Division of the Superior Court stating that a fee was due for the entry of judgment on the arbitration award. The plaintiff's counsel immediately recognized that he had failed to file a written notice of rejection of the arbitration award. Therefore, on March 3, he hand-delivered a written notice of rejection of the arbitrator's award to the Arbitration Division, and either faxed or hand-delivered copies to opposing counsel. Two days later, on March 5, 1994, the Arbitration Division returned the notice of rejection with a notation that it had been filed out of time.

Under the Superior Court Rules Governing Arbitration of Civil Actions, after the arbitration hearing is concluded (or after the receipt of the posthearing briefs, whichever is later), the arbitration award must be filed within ten days. Super.R.Arb. 4(a). The arbitrator is also required to forward copies of the award to the counsel of record or to a *pro se* litigant. Super.R.Arb. 4(d). Arbitration Rule 5(a) states that "[a]ny party * * * who is dissatisfied with an arbitrator's award may have a trial as of right upon filing a *written* rejection of the award *on an approved form* within 20 days after the arbitrator's award has been filed." (Emphases added.) If no party files a written rejection of the award within twenty days after the filing of the award, "the court shall enter judgment to include interest and costs, if any, on the arbitrator's award." Super.R.Arb. 6(b).

Unfortunately, in the case at bar there existed some confusion as to whether this

---

1. The plaintiff's original complaint named, in addition to Peoples and Germain, Van Wert Manufacturing Co., Inc., a Pennsylvania corporation, as a defendant.

procedure was followed. According to the listing of Superior Court docket events, judgment on the arbitration award was entered on March 2, 1994. However, the record in this case contains no other indication that judgment was entered by the trial justice pursuant to Rule 6(b) of the Rules of Arbitration. Indeed, the trial justice stated at the hearing on the motion for relief from judgment, "I don't remember ever signing a judgment in this case, and * * * I would have remembered it because I know the travel of this case, and I don't see a judgment in here."

In any event plaintiff claimed that it moved for leave to file the notice of rejection out of time on March 4, 1994, and on March 11, 1994, moved for relief from judgment pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. At the same time plaintiff's counsel also filed an affidavit that stated:

"As evidence of mistake, inadvertence, and/or excusable neglect, I contend that the undersigned's conduct following receipt of the arbitrator's award, clearly and unequivocally communicated to all parties, and to the Court, Plaintiff's rejection of the arbitrator's award, and was reasonable under the circumstances of this case. The undersigned overlooked, until not more than three days after the deadline therefor, the filing of a written rejection. No party or attorney was under any misapprehension as to the Plaintiff's position of proceeding with the prosecution of its claim at trial. This position was timely (i.e. within the twenty day period for rejection) orally communicated directly to opposing counsel, to the insurance carrier for one of the defendants, and to the Court. Opposing counsels' knowledge of Plaintiff's posture is evidenced by the filing of new discovery requests following their receipt of said oral communication of rejection. No prejudice accrued to any party (except plaintiff) on account of said out-of-time filing of written notice of rejection."

At a March 16, 1994 hearing before the trial justice, plaintiff's counsel stated:

"[M]y argument as made this morning applies to both my motion to file the rejec-

tion out of time and to my motion to vacate. * * * My neglect is not unexplained. I replied [sic] upon my oral communications with the Court and with opposing counsel. As to my own personal reasons for missing it, your Honor, I represent to the Court that for me it was an extremely busy time. I'm the managing partner of my firm which is a small firm, but I'm also the litigator in my firm. As the Court will know, during the period following the arbitration I tried before your Honor a jury-waived trial with the State on the other side. When I received the arbitrator's award, I undertook what I considered to be reasonable communications with counsel on the other side to communicate to them our rejection of that award. And the only thing that I didn't do was file a written notice. The prejudice that arises out of that is only to me and to my client. There was a three-day delay in the filing of our notice of rejection. No defendant can credibly claim that their position changed in any manner as a result of that three-day delay. Indeed, they accepted my oral notice of rejection, and they reinitiated discovery in the case."

The trial justice granted the motion to reject out of time and also granted the motion for relief from judgment "to the extent that there is a judgment entered in this action." The trial justice stated:

"I think all counsel and the Court were aware that the negotiations had failed as much as everyone had tried very hard to settle the case. I think we all knew that the arbitration award would be rejected and that trial would be had. If counsel forgot or overlooked the filing of a written notice in the context of arbitrating, negotiating and preparing for trial in this matter, then I think it is excusable neglect under the circumstances. [The plaintiff's counsel] was engaged in another trial before me during that period of time. It was a very complex condemnation case which was reached with very very little notice.

"As far as I'm concerned, the Rules of Procedure exist in order to do justice and to achieve fair results. I will not use the rules to trip up an attorney or a litigant

who I know from personal observation has acted diligently and in good faith in every other respect. * * * Considering the circumstances, I think the oversight was neglect, and I think it was excusable."

Following that decision, each defendant filed a separate petition with this court for issuance of a writ of certiorari. The petitions were granted, and the cases were consolidated for briefing and oral argument.

## Applicable Rules

The defendants argued before this court that the trial justice abused her discretion in granting plaintiff's motions because plaintiff failed to establish excusable neglect as required by Super.R.Civ.P. 6(b)(2) or 60(b), or both. We agree.

Rule 6(b) of the Superior Court Rules of Civil Procedure states in pertinent part:

"Time.—* * *

(b) *Enlargement.* When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * * but it may not extend the time for taking any action under Rules 52(b), 59(b), (d), and (e), 60(b), and 73(a) [repealed] except to the extent and under the conditions stated in them."

Rule 60(b) of the Rules of Civil Procedure provides:

"Relief from judgment or order.—* * *

(b) *Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect * * *. The motion shall be made within a reasonable time, and not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not

affect the finality of a judgment or suspend its operation."

Before we turn to an analysis of these rules, however, we must first determine whether they apply to the instant case. The defendants claimed that after the period for rejection of an arbitration award has expired, court-annexed arbitration is binding and the arbitration rules mandate that the arbitrator's award be entered by the trial court. The plaintiff, on the other hand, contended that the Rules of Civil Procedure are applicable to court-annexed arbitration proceedings, and that, therefore, the Rules of Arbitration do not supersede the Rules of Civil Procedure.

The Rules of Arbitration provide that if no party has filed a written rejection of the arbitrator's award within twenty days after the award is filed, "the court *shall* enter judgment" on the arbitrator's award. (Emphasis added.) Super.R.Arb. 6(b). The issue before us is whether this mandate effectively precludes the trial justice from granting discretionary extensions or waivers of this deadline when certain conditions are met pursuant to the Rules of Civil Procedure. We hold that the Rules of Civil Procedure and the interpretations of those rules are applicable to court-annexed arbitration proceedings, and that, therefore, a trial justice has discretionary authority to extend or to waive the filing deadline in arbitration proceedings.

This precise question has not previously been fully addressed by this court. In *Limoges v. Eats Restaurant,* 633 A.2d 1359, 1359 (R.I.1993), an order issued by this court, the plaintiff appealed from the Superior Court's denial of her motion for leave to file a rejection of an arbitrator's award out of time. This court found that the appeal was untimely and upheld the denial. *Id.* at 1360. Although the order stated that "the rules developed for the purpose of arbitration of civil actions should be the only guide in this situation," *id.* at 1359, the reasoning behind this holding was not developed.

In *Leal v. Fontaine,* 636 A.2d 731, 731 (R.I.1993), another order issued by this court, the defendants appealed from the denial of their motion to vacate a default judg-

ment entered against them in the Superior Court. In that case we held that because the notification of arbitration was sent to the wrong address and was therefore never received by the defendants, the defendants were "entitled as a matter of law to the vacation of the default judgment." *Id.* The order thus impliedly held that the Rules of Civil Procedure could be applied to the Rules of Arbitration, *i.e.,* Super.R.Civ.P. 60(b) could be applied to Super.R.Arb. 6(b).

In Rhode Island, the arbitration program was established "to 'reduce the costs of litigation and resolve cases assigned to the program more efficiently and timely.'" *Quality Court Condominium Association v. Quality Hill Development Corp.,* 641 A.2d 746, 752 (R.I.1994) (citing Arbitrator's Manual, Superior Court of Rhode Island at 5 (R.I.Law Institute)). The Rules of Arbitration "were promulgated to govern the operations of the program and to aid in furthering its purpose." *Id.* Except for certain enumerated exceptions, the Rules of Arbitration apply to "[a]ll civil actions filed in the *Superior Court* in which there is a claim or there are claims for monetary relief not exceeding $100,000 total, exclusive of interest, costs and attorneys' fees." (Emphasis added.) Super.R.Arb. 1(a).

We are of the opinion that neither the Rules of Arbitration nor the policy of moving disputes more efficiently through the judicial system restricts the trial justice's discretionary powers to permit late filing of a notice of rejection upon a showing of excusable neglect under Rule 6 or Rule 60 of the Superior Court Rules of Civil Procedure. *See Detroit Automobile Inter–Insurance Exchange v. Gavin,* 416 Mich. 407, 423, 331 N.W.2d 418, 425–26 (1982) (holding that Michigan's arbitration rule with a twenty-day deadline did not mandate that the trial justice's "discretionary power to permit a party to plead beyond established time limits upon a showing of excusable neglect * * * is, or should be, curtailed").

■ Consequently, we hold that the Rules of Arbitration supplement, rather than supersede, the Rules of Civil Procedure; we further hold that the Rules of Civil Procedure, when applicable to arbitration proceedings, are to be interpreted in the same way as they are interpreted in other civil cases. Hence, the deadline for filing a written rejection established in Rule 5(a) of the Rules of Arbitration and the direction that the trial justice enter judgment on the award if no written rejection is filed within twenty days in Rule 6(b) of the Rules of Arbitration do not restrict the trial justice's discretionary power to enlarge time when the moving party demonstrates the existence of certain conditions. *See Pearce v. Lindstrom,* 443 N.W.2d 857, 859 (Minn.Ct.App.1989)("[b]ecause nonbinding arbitration is not expressly excepted in Rule 60.02, it cannot be considered an exception and must be included as a judgment from which one may obtain relief"); *Mazakas v. Wray,* 205 N.J.Super. 367, 371, 500 A.2d 1085, 1088 (1985) ("[w]e determine that the courts do possess the power to enlarge the time, but that such power should be exercised only in extraordinary circumstances").

■ The defendant Germain raises the issue, however, that some courts have held that the establishment of excusable neglect is jurisdictional and that if excusable neglect is not shown, no jurisdiction exists to hear the matter. We disagree. Certainly no Rhode Island cases so hold. We concur with the Supreme Court of Michigan that

> "the party challenging an arbitration award in [the trial] court loses only the *right* to proceed where his motion is untimely filed. The court's jurisdiction over the challenge is not lost because the motion to vacate was untimely filed. The court may, in its discretion, permit the untimely motion." *Gavin,* 416 Mich. at 423 n. 5, 331 N.W.2d at 426 n. 5.

Under Rhode Island law loss of jurisdiction is virtually impossible once jurisdiction of the subject matter is properly established. *See La Petite Auberge v. Rhode Island Commission for Human Rights,* 419 A.2d 274, 279 (R.I.1980); *Hartt v. Hartt,* 121 R.I. 220, 227, 397 A.2d 518, 522 (1979).

### No Excusable Neglect in This Case

Having determined that the trial justice had authority to permit the untimely rejec-

tion as well as the jurisdiction to do so, we now must determine whether the trial justice abused her discretion in vacating the judgment on the basis of excusable neglect. We are of the opinion that she did. Although the trial justice, because of the applicability of the Rules of Civil Procedure to the prior arbitration proceeding, had the discretion to permit a late filing under certain conditions, it is our conclusion that those conditions were not met in the instant case.

■ The trial justice in this case granted plaintiff's motion for enlargement of time and conditionally granted plaintiff's motion for relief from judgment, decisions that under the Rules of Civil Procedure are entrusted to the discretion of the trial justice. Specifically, Rule 6(b) of the Superior Court Rules of Civil Procedure states that "the court for cause shown may at any time *in its discretion* * * * order the period enlarged," and Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court *may* relieve a party * * * from a final judgment, order, or proceeding." (Emphases added.) We review such decisions, therefore, only for an abuse of that discretion or for an error of law. *Iddings v. McBurney,* 657 A.2d 550, 553 (R.I.1995). *See Friendly Finance Corp. v. Calise,* 105 R.I. 203, 205, 250 A.2d 709, 711 (1969)(upholding the denial of a motion to answer out of time because the trial justice did not abuse his discretion). The burden of proof is on the moving party, *Iddings,* 657 A.2d at 553, and although our review must be deferential, "deferential review cannot be equated with no review at all." *In re Scheri,* 51 F.3d 71, 75 (7th Cir.1995).

■ The defendants argued that the trial justice abused her discretion in granting plaintiff's motions because plaintiff failed to set forth any justifiable reasons which would constitute excusable neglect under the Superior Court Rules of Civil Procedure. The defendants point to plaintiff's counsel's explanation that he was busy and "overlooked" the mandated filing of the written rejection as insufficient to constitute excusable neglect. It is well settled that unexplained neglect, whether by a party or its counsel, standing alone, will not automatically excuse noncompliance with orderly procedural requirements. *Iddings,* 657 A.2d at 553; *Vitale v. Elliott,* 120 R.I. 328, 331, 387 A.2d 1379, 1381 (1978). Relief from a counsel's failure to comply with procedural requirements will not be granted "unless it is first factually established that his [or her] neglect was occasioned by some extenuating circumstance of sufficient significance to render it excusable." *King v. Brown,* 103 R.I. 154, 157, 235 A.2d 874, 875 (1967). "Excusable neglect" is defined in Black's Law Dictionary 566 (6th ed. 1990) as

> "a failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party. As used in rule (e.g. Fed.R.Civil P. 6(b)) authorizing court to permit an act to be done after expiration of the time within which under the rules such act was required to be done, where failure to act was the result of 'excusable neglect', quoted phrase is ordinarily understood to be the act of a reasonably prudent person under the same circumstances."

In *Pari v. Pari,* 558 A.2d 632, 635 (R.I.1989), this court adopted the standard embodied in the latter portion of this definition and held that "[e]xcusable neglect that would qualify for relief from judgment is generally that course of conduct that a reasonably prudent person would take under similar circumstances."

■ It is clear that plaintiff's counsel's explanation that he "overlooked" the filing of a notice of rejection, apparently because of duties attendant to his practice, was not an "extenuating circumstance of sufficient significance" to warrant relief from judgment. Counsel's failure to file a notice of rejection within the prescribed period was not a course of conduct that a reasonably prudent person would have taken in the circumstances. Thus, we hold that counsel's explanation that it was "an extremely busy time" for him was insufficient to constitute excusable neglect. "The term excusable neglect 'is not meant to cover the usual excuse that the lawyer is too busy, which can be used, perhaps truthfully,

in almost every case.'" *Selph v. Council of Los Angeles,* 593 F.2d 881, 884 (9th Cir.1979)(quoting *Maryland Casualty Co. v. Conner,* 382 F.2d 13, 16–17 (10th Cir.1967) (examining the standard for determining what is "excusable neglect" under Federal Rules of Appellate Procedure Rule 4(a)).

■ The plaintiff also argued that its explanation was legitimized by the fact that each of defendants had actual oral notice that the arbitration award was unacceptable. This contention, however, ignored the clear provisions of Rule 5(a) of the Rules of Arbitration, which explicitly require written notice of rejection. Rule 5(a) requires the litigant not only to file a written rejection but also to submit the rejection on an approved form. Oral notification is simply not contemplated in the rule. As defendant Peoples pointed out, it is fairly commonplace for litigants to issue or to receive an oral representation of an intent to file a written rejection in order to precipitate or to increase a demand for settlement. We deem it impermissible to allow such negotiating tactics to bolster a claim of excusable neglect or to nullify the clear and specific requirements of Rule 5(a) of the Rules of Arbitration.

■ The plaintiff further argued that defendants were not prejudiced by the trial justice's granting of plaintiff's motions and supported its contention by noting the short time between the passing of the deadline and plaintiff's filing of the rejection. The excusable-neglect standards in Rules 6(b) and 60(b) of the Rules of Civil Procedure, however, do not address the issue of prejudice. Rather, the rules focus on the movant's reasons for missing the deadline, not on the effect of missing the deadline upon the opposing party. Therefore, a demonstration that the opposing party was not prejudiced is not relevant to whether the movant's conduct constituted excusable neglect. The rules address the reasons for the neglect, not its duration or consequence.

Finally, plaintiff cited cases under both federal and state rules on excusable neglect, cases in which courts have examined the reasons for the defaults caused by a party's failure to timely file. In particular, plaintiff pointed to a case from the Seventh Circuit that examined the excusable-neglect stan-

dard under Rule 60(b)(1) of the Federal Rules of Civil Procedure. *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Co.,* 842 F.2d 164 (7th Cir. 1988). In that case, the court stated that "the 'willfulness' of the defaulting party's actions is the 'common thread' which runs through our decisions addressing [Federal] Rule 60(b) motions to vacate default judgments." *Id.* at 167. The plaintiff in the case at bar maintained that his counsel's actions lacked the insouciance to bring his conduct within the sweep of "willfulness." With this contention we must disagree. Although the court in *North Central* did not define willful negligence, it did state that Federal Rule 60(b) "is applied liberally in the default judgment context only in the exceptional circumstances where the events contributing to the default judgment have not been within the *meaningful control* of the defaulting party, or its attorney." *Id.* (quoting *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1206 (7th Cir.1984)). In the instant case plaintiff's counsel's failure to file a timely notice of rejection was fully within his control, and his failure to do so derived from his own conduct. Thus, plaintiff's reliance on *North Central* is unavailing.

In consequence, we are led to conclude that it was an abuse of discretion to find excusable neglect in this case. Judgment should have been entered on March 2, 1994, and should not have been vacated pursuant to the plaintiff's motions. Because the excusable-neglect issue is dispositive in this case, we refrain from reaching the parties' remaining issues.

Accordingly we grant the petitions for certiorari of Apple, Peoples, and Germain and quash the order of the trial justice that granted the plaintiff's motions for enlargement of time and for vacation of judgment. Because judgment had not been entered, we direct the Superior Court to enter the appropriate judgment. The papers in this case are remanded to the Superior Court with our decision duly endorsed thereon.

BOURCIER, J., did not participate.